I concur in the view that the vacation statute applies to Hibbing; that it does not delegate legislative power to the judiciary, in contravention of the Constitution; and that the finding that the vacation will result in the promotion of public interest, so far as public interest is involved in a vacation and as the term is understood and applied in vacation proceedings, is sustained by the evidence. I do not agree that the damages suffered by the owners of lots south *Page 455 
of the vacated forty are all general and none special, and that none of the owners can be compensated.
The injury to the lot owners, so far as it results in taking from them merely the right, common to all, of public travel, and compelling them to take a circuitous route, is in kind that of the general traveling public, though it differs in degree. In a proper case the vacating body or tribunal may take away without compensation the common right or easement of travel. It cannot release without compensation special damages caused by the vacation.
The statute contemplates that the party moving for the vacation, much like the petitioner in condemnation, will profit, and that the landowner may suffer specially; and if he is so damaged it requires compensation as a condition.
The vacation is largely in the interest of the owners of the underlying ore — would not have been initiated but for them — and it is none the less proper because the fact is so. Their private property rights are not to be disregarded. The development of the mines results in special profit to them, and there is a resultant incidental benefit to the general public. It is not to be thought, either from the viewpoint of the public or that of the mine owners, that the vast body of ore is to be locked in the north forty permanently, or beyond a time when in the progress of the mining industry it naturally would be removed; but insofar as unlocking it causes special injury by bottling up the lots to the south the ore body should bear the burden of the damage.
It is not important to the large general public, nor very important to most of the local Hibbing public, whether they are able to get to the property south of the vacated forty; but it is important to the individual owner that he be able to get to and from his residence or place of business, and that the public have the means of getting there for social or business purposes. This principle is noted in some of the cases cited in the prevailing opinion as helping to distinguish general and special damages.
A great traffic has passed for years over the viaduct and through the north forty to the property to the south. Property has been bought and improved with that situation in view. The traffic gave *Page 456 
value to the property and it is gone. So far as anyone knows there is not to be again direct access to and from the north. The property is less valuable for use, less productive of rents, and less salable. The platted property to the south is the width of a forty. It is in the form of a peninsula, as indicated in the prevailing opinion, directly or indirectly surrounded on three sides by deep impassable open pits constituting a continuous excavation. It might as well be surrounded by a river or lake incapable of bridging. No one at present sees a way of bridging them or passing through them. The property has a use and value still. The use, at least of some of it, will be restricted, and there must be a readjustment with consequent loss. It is not an ordinary vacation. The plat of the north forty stood in the way of the proper development of the mining industry. It is vacated, the streets are gone, the property to the south cut off, and the geography of north Hibbing is entirely changed.
Under our decisions it is not an essential element of special damages that the vacation makes the abutting street a cul de sac, as it did in the Vanderburgh case, and as it did in the Maletta case which involved the vacation of the forty east of the north forty where it was held as a matter of law that the injury was special. The damage to the Maletta property seems to me no less special than that done to some of the lots involved here, and no less special than the damage in the Vanderburgh case; and Fitzer v. St. Paul City Ry. Co. 105 Minn. 221, 117 N.W. 434. 18 L.R.A. (N.S.) 268, 127 Am. St. 557, goes far beyond the necessities of this case in holding damages special. This court, perhaps influenced in part by the constitutional provision, has adopted the liberal as distinguished from the strict rule prevailing in some states in holding damages special.
I dissent only so far as the holding is that none of the property owners were entitled to damages.
On November 13, 1925, the following opinion was filed: